IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE VINCENT J. ROBEEN, | ) |
| | ) |
| Debtor, | ) |
| | ) |
| BANK OF KAMPSVILLE, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| vs. | ) Case No. 05-cv-0199-MJR |
| | ) |
| LAURA K. GRANDY, | ) |
| | ) |
| Trustee-Appellee. | ) |

**MEMORANDUM AND ORDER ON BANKRUPTCY APPEAL**

**REAGAN, District Judge:**

### I. FACTUAL AND PROCEDURAL BACKGROUND

This matter first came before the bankruptcy court under Chapter 7 of the U.S. Bankruptcy Code, **11 U.S.C. § 701** *et seq*. The Bankruptcy Trustee and Appellee, Laura K. Grandy, requested the recovery of an alleged preference pursuant to **11 U.S.C. § 547**.

The parties stipulated to most of the relevant facts before the Bankruptcy Judge. Debtor, Vincent Robeen, and his wife Virginia had each owned an undivided one-half interest in sold approximately 76 acres of farmland. On January 29, 2003, they sold the property to their son Gary Robeen and his wife Mary for $100,000. The transfer of interest in the property was achieved by a quitclaim deed recorded January 30, 2003. Gary and Mary financed the purchase by borrowing $100,000 from the Bank of Kampsville, the Appellant in this case.

In addition to owning the farmland, Debtor was a partner in a general partnership known as Calhoun County Ford, which was in the business of selling and leasing Ford vehicles. The

1

partnership owed the Bank of Kampsville an amount in excess of $100,000, and this outstanding loan was secured by a perfected security interest in the dealership's inventory. Debtor was also personally obligated for the loan. In addition to the security interest on inventory, the Bank of Kampsville also had a lien on three specific vehicles in the inventory, representing a total N.A.D.A. loan value of $22,775. When Debtor and his wife sold the farmland to their son and daughter-in-law, the $100,000 check issued to Debtor by the Bank as a result of their loan was immediately endorsed back to the Bank to apply to the debt owed by the partnership. The Bank then released the titles on the three vehicles upon which they had had liens. This $100,000 represents more than the Bank could have recovered if it had been forced to press its claims during the Bankruptcy Court proceeding. However, the parties dispute whether Debtor's wife's share of the proceeds were properly deemed the property of the Debtor.

At the time of the sale of the farmland, and contemporaneously with the dealership debt, Debtor's wife also owed the Bank on a separate Note in the amount of $29,260, dated December 8, 2002 and payable on demand. Debtor and his wife together also owed the Bank on a Note in the amount of $90,020, dated January 16, 2003 and payable on demand. This latter note was fully secured by certificates of deposit owned by Debtor and his wife.

At the time of the sale of the farmland, Debtor was insolvent. On April 25, 2003, an Involuntary Petition for Relief was filed against the Debtor, and an Order of Relief was entered on June 11, 2003.

At the Bankruptcy Court proceeding, the Trustee/Appellee sought to avoid the January 29, 2003 payment of $100,000 as a preferential transfer under **11 U.S.C. § 547(b)**. This section allows the trustee to avoid a transfer that was for the benefit of a creditor within 90 days of

that transfer, if the transfer was made while the debtor was insolvent and was for antecedent debt, and allowed the creditor to recover more than it would have in the context of bankruptcy proceedings. **Section 547(c)** makes an exception to this rule, in that it allows credit for "new value" received by the debtor as a result of the transfer. In this case, the Bank released the liens on three vehicles in Calhoun Ford's inventory. Trustee thus concedes that the Bank is entitled to a credit of $22,775, but sought to avoid the residue of the transaction, or $77,225. The Bankruptcy Court granted this avoidance.

The Bank argued at that proceeding, and reiterates on appeal, that only $27,225 should be avoided. The remaining $50,000 represents Debtor's wife's portion of the proceeds of the property. By virtue of signing the entire $100,000 check over to the Bank, Debtor's wife's portion of the proceeds were *de facto* transferred to Debtor and then on to the Bank. The Bank argues that this transfer was not an actual gift from Debtor's wife to Debtor and thus not part of the Debtor's estate subject to the statutory provision on avoidance. In the alternative, the Bank argues that if the transfer was an actual gift in that it was specifically for the purpose of repaying the Bank and is thus excluded from avoidance under the "earmarking doctrine."

## II.  WHETHER THE TRANSFER WAS A GIFT

In Illinois there are three requirements that must be met if a transfer of property is to be considered a gift: (1) donative intent; (2) relinquishing control of the property; and (3) delivery of the property. ***See Dubisky v. United States*, 62 F.3d 182 (7th Cir. 1995);** *In re Marriage of Weiler*, **629 N.E.2d 1216 (Ill. App. 5th Dist. 1994);** *Moniuszko v. Moniuszko*, **606 N.E.2d 468 (Ill. App. 1st Dist. 1992).** At the Bankruptcy Court proceeding, Debtor's wife testified that she wanted Debtor to have the money to pay down his debt to the Bank. She endorsed the check she

3

received along with her husband from the sale of the farmland, which was made out to both of them. In endorsing the check over to the Bank, it may be argued that she effectively delivered the money to the Bank on her husband's behalf. These facts were found by the Bankruptcy Court. Under **Fed. R. Bankr. P. 8013**, on appeal this Court may only review findings of fact for clear error. ***See also, e.g.***, ***Magill v. Newman*, 903 F.2d 1150 (7th Cir. 1990).** It does not seem that the Bankruptcy Court made any clear error in finding facts, based on its opportunity to hear testimony and determine the credibility of witnesses.

Nevertheless, the Bank argues that there was no donative intent because Debtor's wife received consideration for her alleged gift. The Bank argues that the discharge of Debtor's debt constitutes consideration. But it is a basic rule of contract law that only benefits to the giver count as consideration. The $50,000 was given to Debtor, and after he gave it to the Bank he was relieved of his debt. It is far from clear that this transfer was a loan, under which the discharge of Debtor's debt would qualify as consideration. ***See Cent. Bank & Trust v. Consumers Constr. Co.*, 282 N.E.2d 158 (Ill. App. 2d Dist. 1972).** It is unclear what Debtor's wife received, aside from perhaps peace of mind, which cannot be counted as consideration. This argument clearly fails. The Bank also claims that Debtor's wife received a benefit in the form of the Bank refraining from collecting on her outstanding notes and those of the partnership. But the Bank did not *give up* the right to collect, it merely refrained from doing so *immediately*, for some period of time that from the record was not discussed or contemplated by the parties. Thus this argument also must fail.

At oral argument, the Bank argued that if this transfer were a gift, and thus could be avoided, then cosigners or loan guarantee agreements would be meaningless. But those situations are not analogous to the case at bar. A cosigner or loan guarantor signs a written instrument and

agrees to be financially responsible for a debt if the debtor is unable to pay. The instant circumstances bear no resemblance to such contracts, and will not be treated as such.

The Bank also asserted at oral argument that paying off a creditor directly (without being contractually obligated to do so) is not a gift to the debtor. But if the transferor of value does so without expecting anything in return, gives up his value to the creditor, and delivery to the debtor is established by virtue of a reduction in his debt, then the three elements of a gift as outlined in *Dubisky* are met, and the transfer is a gift. The Court finds that those three elements are satisfied in this case.

### III.  WHETHER THE "EARMARKING DOCTRINE" APPLIES

The "earmarking doctrine" is a judicially created exception to the avoidance rules. It states that if a third party loans a debtor money, with both parties agreeing that the money is for the purpose of paying off a creditor, that the money is "earmarked" for the creditor and not subject to the avoidance rules. There are four requirements for a transfer to be subject to the earmarking doctrine: (1) there must be an agreement between the third party and the debtor that the money is earmarked; (2) the creditor must actually receive the money; (3) the debtor must not have dispositive control over the money; and (4) the overall transaction must not deplete the debtor's estate. **See, e.g., *In re Grabill Corp.*, 135 B.R. 101 (Bankr. N.D. Ill. 1991); *In re Bohlen Enters., Ltd.*, 859 F.2d 561 (8th Cir. 1988).** There is disagreement among bankruptcy courts as to whether the third party must pay the creditor directly, or whether a transfer to the debtor with the understanding of earmarking is sufficient to invoke the doctrine. **See *In re Ludford Fruit Prods., Inc.*, 99 B.R. 18 (Bankr. C.D. Cal. 1989)(payment must be directly from third party to creditor); *cf. Tolz v. Barnett Bank (In re Safe-T-Brake)*, 162 B.R. 359 (Bankr. S.D. Fla. 1993)(transfer to debtor**

**with agreed-upon intent is acceptable).** The Bankruptcy Court pointed out that the case cited by the Bank, ***In re Kelton Motors, Inc.*, 97 F.3d 28 (2d Cir. 1996)**, can be distinguished from the case at bar because that case involved a third-party *loan* to debtor for the purpose of paying off an old creditor. In fact, every case known to this Court that applies the earmarking doctrine involves third-party loans, not gifts. The Bank may have intended or understood the transaction that occurred in the Robeens' home to be the sort of transaction to which the earmarking doctrine applies. At oral argument the Bank argued that it never would have entered into the transaction if it had not believed that it was strictly for the purpose of paying off the debt. But even if Debtor's wife had said she wanted him to pay off his debt and was participating in the transaction so that he could do so, it still does not qualify. Cosigning a check directly to a creditor and taking nothing of value in return, an act which as noted above is a gift, does not fall within the purview of the doctrine. In either case it seems like this argument must fail. The Court finds that the earmarking doctrine does not apply.

### IV.  CONCLUSION AND ORDER

For the reasons outlined above, the Court hereby **AFFIRMS** the ruling of the Bankruptcy Court.

**IT IS SO ORDERED.**

**DATED this 3rd day of March, 2006.**

                                           **s/Michael J. Reagan**
                                           **MICHAEL J. REAGAN**
                                           **United States District Judge**